UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 17bk35941 |
| | ) | |
| Larry Shelton, | ) | Chapter 13 |
| | ) | |
| Debtor. | ) | Judge Timothy A. Barnes |

TIMOTHY A. BARNES, Judge.

MEMORANDUM DECISION

Before the court is Trustee Marilyn O. Marshall's Objection to Confirmation [Dkt. No. 37] (the "Objection") brought by the chapter 13 trustee (the "Chapter 13 Trustee") in opposition to an amended Chapter 13 Plan dated February 13, 2018 [Dkt. No. 31] (the "Plan") presented by Larry Shelton, the debtor in the above-captioned case (the "Debtor").

The Chapter 13 Trustee objects to the Plan insofar as it is structured to provide payments to a secured creditor beginning as minimal, adequate protection payments and thereafter stepping up those payments to a more fulsome amount—a so-called "step" plan. Here, the increase in payments occurs when payments to the Debtor's counsel, The Semrad Law Firm, LLC ("Semrad"), are scheduled to be complete. The Chapter 13 Trustee alleges that such a payment structure violates the express requirements of chapter 13 plans, exists solely to benefit Semrad and is proposed in bad faith.

For the reasons more fully stated below, the court agrees. The Objection will be sustained and confirmation of the Plan denied.

JURISDICTION

The federal district courts have "original and exclusive jurisdiction" of all cases under title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code"). 28 U.S.C. § 1334(a). The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under the Bankruptcy Code or arising in or related to cases under the Bankruptcy Code. 28 U.S.C. § 1334(b). District courts may, however, refer these cases to the bankruptcy judges for their districts. 28 U.S.C. § 157(a). In accordance with section 157(a), the District Court for the Northern District of Illinois has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois. N.D. Ill. Internal Operating Procedure 15(a).

A bankruptcy judge to whom a case has been referred may enter final judgment on any core proceeding arising under the Bankruptcy Code or arising in a case under the Bankruptcy Code. 28 U.S.C. § 157(b)(1). Bankruptcy judges must therefore determine, on motion or *sua sponte*, whether a proceeding is a core proceeding or is otherwise related to a case under the Bankruptcy Code. 28 U.S.C. § 157(b)(3). As to the former, the court may hear and determine such matters. 28 U.S.C. § 157(b)(1). As to the latter, the bankruptcy court may hear the matters, but may not decide them without the consent of the parties. 28 U.S.C. §§ 157(b)(1) & (c). Instead, the bankruptcy court must

"submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing *de novo* those matters to which any party has timely and specifically objected." 28 U.S.C. § 157(c)(1).

In addition to the foregoing considerations, a bankruptcy judge must also have constitutional authority to hear and determine a matter. *Stern v. Marshall*, 564 U.S. 464 (2011). Constitutional authority exists when a matter originates under the Bankruptcy Code or where the matter is either one that falls within the public rights exception, *id.*, or where the parties have consented, either expressly or impliedly, to the bankruptcy court hearing and determining the matter. *See, e.g., Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1939 (2015) (parties may consent to a bankruptcy court's jurisdiction); *Richer v. Morehead*, 798 F.3d 487, 490 (7th Cir. 2015) (noting that "implied consent is good enough").

Matters involving confirmation of a debtor's chapter 13 plan may only arise in a bankruptcy case, concern the administration of the bankruptcy estate and are, thus, within the court's core jurisdiction. 28 U.S.C. § 157(b)(2)(A), (L); *In re Williams*, 583 B.R. 453, 455 (Bankr. N.D. Ill. 2018) (Hunt, J.) ("Matters relating to confirmation of a plan are core proceedings under 28 U.S.C. § 157(b)(2)(L)."). The matter is therefore core and within the court's jurisdiction. The Debtor has submitted itself to this core jurisdiction and authority by bringing the above-captioned case.

As a result, this court has jurisdiction, statutory authority and constitutional authority to hear and determine this matter.

## PROCEDURAL HISTORY

In considering the Objection, the court has considered the Plan, the prior plans presented by the Debtor, National Form B113 (the "National Plan") upon which each plan was based[1] and the Debtor's Response to Trustee's Objection to Confirmation [Dkt. No. 45] (the "Response").

On December 7, 2017, the Debtor presented its original Chapter 13 Plan [Dkt. No. 13] (the "Original Plan").[2] The Original Plan contained a provision with an effect similar to the one at issue in the Plan, though with substantially different language used to obtain that effect. *See* Original Plan § 8.1.

On January 25, 2018, the court conducted the first of four confirmation hearings in this matter (collectively, the "Hearings"), at the time considering the Original Plan. Early in the Hearings,

---

[1]    The National Plan was promulgated by the Judicial Conference of the United States, effective December 1, 2017, applicable to cases filed on or after that date. Pursuant to Rule 3015.1 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), judicial districts each have the authority to adopt in lieu of the National Plan a local plan, so long as that local plan complies with the requirements of the Bankruptcy Code and Bankruptcy Rules. The Northern District of Illinois did not adopt a local plan and this case was commenced on December 1, 2017. As such, the National Plan applies in this case.

[2]    Also on December 7, 2017, the Debtor filed four amended plans [Dkt. Nos. 15-18], an amended plan docketed in error [Dkt. No. 20] and a Chapter 13 Plan/Modified Plan "Redocketed to Send Notice" [Dkt. No. 21]. With respect to the matter before the court, each of these appears to be the same as the Original Plan.

the Chapter 13 Trustee voiced concerns over nonstandard provisions in the Debtor's plans. While the Debtor revised the Original Plan when filing the Plan at issue here, the problematic effect of the nonstandard provisions remains unchanged.

Early in this case Semrad, the Chapter 13 Trustee and the court were also actively engaged in a similar matter, wherein Semrad and other chapter 13 debtors' counsel attempted to change the priority scheme in chapter 13 plans to permit counsel to be paid ahead of other creditors. *See In re Gilliam*, 582 B.R. 459, 470-75 (Bankr. N.D. Ill. 2018) (Barnes, J.). Because objections to plans must be in writing, *see* Fed. R. Bankr. P. 3015(f), and because the matters herein turned, at least in part, on the issues in *Gilliam*, the court continued the matter for an objection to be filed and for *Gilliam* to be decided.

After the Objection was filed, a briefing schedule was set and, as later modified, complied with by the parties. The *Gilliam* decision having been rendered on March 28, 2018, after the matter was fully briefed, the court conducted a final confirmation hearing on the Plan. At that hearing on May 10, 2018, the matter was taken under advisement.

The court has taken into consideration all of the foregoing, as well as the arguments of the parties at the Hearings. The court has taken judicial notice of the contents of the docket in this case. *See Levine v. Egidi*, Case No. 93C188, 1993 WL 69146, at *2 (N.D. Ill. Mar. 8, 1993) (authorizing a bankruptcy court to take judicial notice of its own docket); *In re Brent*, 458 B.R. 444, 455 n.5 (Bankr. N.D. Ill. 1989) (Goldgar, J.) (recognizing same).

Having considered all of the foregoing, this Memorandum Decision constitutes the court's determination of the matters under advisement.

DISCUSSION

The matter before the court is one of several similar matters recently brought before the bankruptcy courts in this District, wherein counsel for chapter 13 debtors seek to manipulate the priority and payment schemes set forth in chapter 13 cases in order to ensure such counsel's payments. While not the only firm engaging in such practices, Semrad, the counsel herein, has led the way in this behavior.

In the *Gilliam* matter noted above, Semrad sought to alter the priority scheme in chapter 13 plans to afford Semrad payment in advance of those payments to which it would otherwise be entitled. *Gilliam*, 582 B.R. at 470-75. In *Gilliam* and fifty other cases determined by the court concurrently therewith, the court found that Semrad's changes to the priority of payments under chapter 13 plans were solely for Semrad's benefit and potentially harmful to Semrad's clients' interests. *Id.* As a result, and because Semrad could demonstrate neither client consent nor full disclosure to the court of this self-dealing, the court reduced Semrad's compensation and imposed rigid disclosure requirements of any similar agreements going forward. *Id.* at 475-77.[3]

---

[3]    In *Gilliam*, the court expressly reserved judgment on whether the nonstandard plan provisions were permissible components of chapter 13 plans, determining instead the practice's impropriety solely in the context of the self-serving nature of the changes and client and court disclosure regarding compensation. *Gilliam*, 582 B.R. at 464, n.3.

3

As noted, it is not just Semrad engaging in this behavior before the undersigned. *See, e.g., In re Williams-Hayes*, Case No. 17bk27961, 2018 WL 2207897, at *1-5 (Bankr. N.D. Ill. Mar. 28, 2018) (Barnes, J.). Further, it is not just the undersigned that has been required to address these issues. *See, e.g., In re Miceli*, 587 B.R. 492, 495 (Bankr. N.D. Ill. 2018) (Lynch, J.) (reduced payments on secured claims); *In re Carr*, 584 B.R. 268, 275 (Bankr. N.D. Ill. 2018) (Thorne, J.) (same); *Williams*, 583 B.R. at 456-57 (same); *In re Jimmar*, Dkt. No. 88, Case No. 17bk11666 (Bankr. N.D. Ill. filed Apr. 13, 2017) (Hunt, J.) (unpublished) (compensation in light of altered priority).

Further, the broader question of law presented herein—reduction of payments to secured creditors under a chapter 13 plan—is also not an issue of first impression in this District, though the courts disagree on the propriety of such practice. *Miceli*, 587 B.R. at 502 (sustaining objection); *Carr*, 584 B.R. at 275 (overruling objection); *Williams*, 583 B.R. at 458 (sustaining objection); *In re Hernandez*, Case No. 08bk72148, 2009 WL 1024621, at *6 (Bankr. N.D. Ill. Apr. 14, 2009) (Barbosa, J.) (overruling objection); *In re Marks*, 394 B.R. 198, 201 (Bankr. N.D. Ill. 2008) (Cox, J.) (overruling objection).

In order to understand this variation and the parties' positions, it is necessary to first understand what exactly the Plan proposes. After having done so, the court will consider the Objection in full, including the standing of the Chapter 13 Trustee in this matter.

## THE DEBTOR'S "STEP" PLAN

The Plan presented to the court by the Debtor is what is known locally as a step plan. Step plans are plans that set artificially low payments to secured creditors for a period of time immediately following the plan's confirmation, then stepping up those payments to a more fulsome amount later in the term of the plan. During this period, the debtor's payments to the Chapter 13 Trustee remain unchanged.

In cases such as this one, where the step is included for the counsel's benefit, the lower initial amount theoretically frees up funds to pay the debtor's counsel, which allows counsel's fees to be paid more quickly. After counsel fees are paid, the amount paid to the secured creditors increases. There are other, more legitimate, uses of step plans. For example, a debtor might seek to reduce payments to secured creditors for a period to allow multiple secured debts to be paid prior to the maturity of one or more of those debts, then step up payments after the mature debts are no longer being paid.

Disregarding the effect of the step for the moment, the Debtor's Plan requires him to pay $900.00 per month for 60 months to the Chapter 13 Trustee. Plan, at § 2.1. The Plan sets distributions from those plan payments to nonmortgage secured creditors as follows: Ally Financial in the amount of $166.00 per month for a car; and American First Financial in the amount of $20.00 per month for furniture. Plan, at § 3.3.

The step is implemented with the following nonstandard plan provisions:

1. Commencing with the 11/2018 plan payment, Ally Financial will receive set payments in the amount of $775.00 per month.

4

    2. Ally Financial will receive pre-confirmation adequate protection payments in the amount of $166.00 per month.

    3. Commencing with the 11/2018 plan payment, American First Financial will receive set payments in the amount of $104.00 per month.

Plan, at § 8.1; *see also* Plan, at § 1.3 (checking the "Included" box for nonstandard Plan provisions). The net effect of these provisions is that both Ally Financial and American First Financial (the "Secured Creditors") will receive reduced payments at the outset of the Plan ($166.00 and $20.00, respectively),[4] which payments will step up to higher payments in November 2018 ($775.00 and $104.00, respectively). The difference of $693.00 (the sum of the initial payments minus the sum of the subsequent payments) per month would presumably then be made available to pay Semrad's counsel fees.

    In considering the Objection, the court is mindful that the burden here lies with the Debtor, as the proponent of the plan. *In re Love*, 957 F.2d 1350, 1354-55 (7th Cir. 1992). In *Love*, the Seventh Circuit was presented with a motion to dismiss under section 1307, but the parties disagreed over whether it was the movant or the debtor who bore the burden of showing that the case was commenced in good faith. *Id.* at 1353-55. The Seventh Circuit compared and contrasted the duties of showing good faith under sections 1307 and 1325 and in so doing observed that case law with respect to section 1325 generally, *see, e.g., Hardin v. Caldwell (In re Caldwell)*, 895 F.2d 1123, 1226 (6th Cir. 1990); *Chinichian v. Campolongo (In re Chinichian)*, 784 F.2d 1440, 1443 (9th Cir. 1986); *In re McKissie*, 103 B.R. 189, 191 (Bankr. N.D. Ill. 1989) (Squires, J.), and the wording of section 1325(a)(3) specifically, 11 U.S.C. § 1325(a)(3) ("has been proposed in good faith"), provide that the burden under section 1325 is on the plan proponent. *Love*, 957 F.2d at 1355.[5]

    In furtherance of that burden, the Debtor has made legal arguments but has offered no reorganization purpose underlying the step payments. Nonetheless, neither of the Secured Creditors has objected to this treatment. The Chapter 13 Trustee has objected, however, and it is to that Objection that the court now turns.

---

[4]     Ally Financial's postconfirmation, pre-step payment is equal to its preconfirmation adequate protection payments. Thus the Plan proposed to pay only adequate protection to Ally Financial at the outset and nothing on Ally Financial's underlying claim.

[5]     While *Love*'s determination was that the burden under section 1307 differs from the one under section 1325, the discussion in *Love* accurately reflects the state of the law here in the Seventh Circuit as to burdens under section 1325. *In re Edmonds*, 444 B.R. 898, 902 (Bankr. E.D. Wis. 2010) ("The burden of proof is upon the debtors, as the plan proponents, to prove all of the elements of a confirmable plan."); *In re Jongsma*, 402 B.R. 858, 871 (Bankr. N.D. Ind. 2009) ("[T]he debtor bears the ultimate burden of proof as to satisfaction of the confirmation criteria of 11 U.S.C. § 1325(a)."); *In re Brown*, 332 B.R. 562, 564 (Bankr. N.D. Ill. 2005) (Hollis, J.) ("As the plan proponent, the Trustee bears the burden to prove the conditions for confirmation of the modified plan over Brown's objection."); *In re Famisaran*, 224 B.R. 886, 892 (Bankr. N.D. Ill. 1998) (Squires, J.) ("The Debtors have the burden of proof and persuasion for confirmation of their Chapter 13 plan under the statutory requirements of 11 U.S.C. §§ 1325 and 1326."). *But see In re Colon*, 561 B.R. 682, 686 (Bankr. N.D. Ill. 2016) (Thorne, J.) (citing *Love*'s conclusion under section 1307 as controlling under section 1325, despite *Love*'s analysis to the contrary); *see also In re Hill*, 585 B.R. 520, 526 (Bankr. N.D. Ill. 2018) (Schmetterer, J.) (same, relying on *Colon*).

## THE CHAPTER 13 TRUSTEE'S OBJECTION

The Chapter 13 Trustee objects to the Plan on three separate grounds, as follows: (1) alleged noncompliance with section 1325(a)(5)(B)(iii) of the Bankruptcy Code; (2) alleged lack of good faith under section 1325(a)(3) of the Bankruptcy Code; and (3) alleged noncompliance with section 1325(a)(1) of the Bankruptcy Code.

The Chapter 13 Trustee's Objection calls into question the propriety of step plans, especially where that step exists solely for the benefit of a debtor's counsel. The court will investigate each of the Chapter 13 Trustee's arguments, in turn.

A.   11 U.S.C. § 1325(a)(5)

The Chapter 13 Trustee's first objection relies on section 1325(a)(5) of the Bankruptcy Code, one of a series of confirmation requirements set forth in section 1325(a). A chapter 13 plan may not be confirmed under this section, unless

> (5)   with respect to each allowed secured claim provided for by the plan—
>
> (A)   the holder of such claim has accepted the plan;
>
> (B)   . . .
>
> (iii) if—
>
> (I) *the property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts;* and
>
> (II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or
>
> (C)   the debtor surrenders the property securing such claim to such holder

11 U.S.C. § 1325(a)(5) (emphasis added).

The purpose of section 1325(a)(5)(B)(iii)(I) is not set forth in the statute and the legislative history is silent. *In re Benedicto*, 587 B.R. 573, 576-77 (Bankr. S.D. Fla. 2018). In *Benedicto*, the court stated:

> Judge Carr astutely observes that the legislative history on this particular Bankruptcy Code provision is thin. *In re Cochran*, 555 B.R. at 901-905. The only congressional report on the amendment to section 1325 is House Report No. 109-31(I) (the "House Report"), which was issued "to accompany [BAPCPA]." H.R. REP. NO. 109-31(I), at 1 (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 88. The House Report's discussion of reforms dealing with abuse is notably silent on the issue of balloon payments to restructure mortgage debt in chapter 13 plans. The sections on

"Protections for Creditors – In General" and "Protections for Secured Creditors" also say nothing about balloon payments for mortgage cures or modifications. H.R. REP. NO. 109-31(I), at 16-17 (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 102-03. Judge Carr accurately notes that "the only formal legislative history" on section 1325(a)(5)(B)(iii)(I), the House Report, "merely echoes the wording of the subsection, without any insight as [to] the purpose of its enactment." *In re Cochran*, 555 B.R. [892, 902 (Bankr. M.D. Ga. 2016)]; *see* H.R. REP. NO. 109-31(I), at 73 (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 141 ("Section 309(c)(1) amends Bankruptcy Code section 1325(a)(5)(B) to require that periodic payments pursuant to a chapter 13 plan with respect to a secured claim be made in equal monthly installments.").

*Id.*

Without the benefit of guidance from Congress, the court is left to consider the statute's purpose in light of its function, what one court has referred to as "educated speculation." *Cochran*, 555 B.R. at 901. That purpose appears, as noted above in *Benedicto*, to be to prevent the manipulation of payments to secured creditors without the consent of the affected creditors. *Benedicto*, 587 B.R. at 576; *accord Miceli*, 587 B.R. at 502 n.13 (referring to the "nearly universal line of cases which had held that the subsection prohibits balloon payments"). By requiring payments to secured creditors to be in equal monthly payments and not less than the adequate protection owed to the affected creditors, section 1325(a)(5)(B)(iii)(I) prevents debtors from ballooning payments to such creditors (delayed creditors), thereby shifting the risk of early failure of plans to be borne by the delayed creditors while diverting payments from delayed creditors to creditors of less protected status.[6]

Ballooning of payments and shifting of risk is exactly what the Debtor proposes here, however. As such, without acceptance of the Plan under section 1325(a)(5)(A), the Plan would unquestionably be unconfirmable. So, has that acceptance occurred?

When investigating acceptance, one case appears to be central to most of the courts' inquiries—*Andrews v. Loheit (In re Andrews)*, 49 F.3d 1404, 1408 (9th Cir. 1995). In *Andrews*, the Ninth Circuit affirmed a bankruptcy appellate panel decision, which in turn affirmed a bankruptcy court's denial of confirmation of a chapter 13 plan. While the denial of confirmation turned on the plan's failure to provide secured creditors adequate protection under section 361, *id.* at 1406, the issue on appeal was whether the chapter 13 trustee had standing to pursue an objection under section 1325(a)(5) in the absence of objections from creditors. *Id.* at 1408. The Ninth Circuit concluded that the chapter 13 trustee had standing, but in so doing, stated in *dicta* that secured creditors who do not object have accepted the plan. *Id.* at 1409.

*Andrews* has become the source of a series of cases, none of which rely on its actual holding. These cases take away from *Andrews* two crucial points of *dicta*.

---

[6] Some courts have read this section differently to mean that it requires debtors to make the same monthly payment under the plan for the life of the plan. *See In re Erwin*, 376 B.R. 897, 902 (Bankr. C.D. Ill. 2007). Such a reading defies the plain meaning of "distributions" in the section. This court agrees with Judge Lynch in *Miceli* that such a reading is "strained." *Miceli*, 587 B.R. at 499. As neither party has addressed this reading of the statute, the court need not consider it here.

7

The first is that the absence of an objection from a secured creditor constitutes acceptance by that creditor for the purposes of section 1325(a)(5)(A). *Andrews*, 49 F.3d at 1409 ("Here, § 1325(a)(5) is fulfilled because subsection (A) was satisfied when the holders of the secured claims failed to object. In most instances, failure to object translates into acceptance of the plan by the secured creditor.").

The second is that an objection from a chapter 13 trustee under section 1325(a)(5) alone may be disregarded, as the treatment is personal to the affected creditors and not therefore an issue on which trustees may be heard. *Id.* ("[W]e find it problematic to confer standing under § 1325(a)(5)."). *Andrews* was recently followed in this District on both of these points. *Carr*, 584 B.R. at 275.

Both of those assumptions are problematic.

One problem with relying on *Andrews* is obvious. Neither of these two points were central to the court's ruling, which determined standing under section 1325(a)(1) for an objection as to whether the plan complied with section 361. *Andrews*, 49 F.3d at 1406-09. These discussions are therefore *dicta* and nonbinding. *Bank of Am. Nat. Tr. & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 460 (1999) (even Supreme Court *dicta* binds neither that Court nor the lower federal courts); *Wilder v. Apfel*, 153 F.3d 799, 803 (7th Cir. 1998) ("*Dicta* are the parts of an opinion that are not binding on a subsequent court, whether as a matter of *stare decisis* or as a matter of law of the case."). As the Seventh Circuit said in *Wilder*,

> They are nonbinding for two reasons. First, not being integral elements of the analysis underlying the decision—not being grounded in a concrete legal dispute and anchored by the particular facts of that dispute—they may not express the judges' most careful, focused thinking. Second, to give the inessential parts of an opinion the force of law would give judges too much power, and of an essentially legislative character; we could hardly consider ourselves judges in the Anglo–American tradition were we to interrupt this opinion to offer our thoughts, however well considered, on, say, the hearsay rule, or the Americans with Disabilities Act, or the FELA.

*Id.*

A second and equally obvious problem is that an opinion from outside of this Circuit is not binding. *United States v. Glaser*, 14 F.3d 1213, 1216 (7th Cir. 1994) ("Opinions 'bind' only within a vertical hierarchy.").

*Andrews* is not, therefore, controlling law on the matter. Further, *Andrews* is unpersuasive, as described below, on each of the two central takeaways. It runs contrary to very basic principles of legal jurisprudence, the nature of the Bankruptcy Code itself and the function of trustees in bankruptcy matters. This strikes to the very heart of the matter.

1. *Silence as Acceptance under 11 U.S.C. § 1325(a)(5)(A)*

For those more used to reorganizations under chapter 11 of the Bankruptcy Code, chapter 13 is a strange bird. Both chapters allow debtors to effectuate plans, which are essentially enforced agreements between debtors and creditors. They achieve that result in materially different ways, however. As Judge Lynch has aptly described this:

8

> In interpreting plans of reorganization in the context of Chapter 11 cases, the Seventh Circuit has stated that "[p]rinciples of contract law apply to interpreting a plan of reorganization." *In re Airadigm Communications, Inc.*, 616 F.3d 642, 664 (7th Cir. 2010). This is because in Chapter 11 a "confirmed plan of reorganization is in effect a contract between the parties and the terms of the plan describe their rights and obligations." *Id. See also Ernst & Young LLP v. Baker O'Neal Holdings, Inc.*, 304 F.3d 753, 755 (7th Cir. 2002). But it is far from clear that a Chapter 13 plan is as analogous to a contract as is a Chapter 11 plan. Unlike in Chapter 11, creditors in Chapter 13 are not entitled to vote on a plan. *See* 11 U.S.C. § 1126. Also, in Chapter 13 only the debtor may file a plan. 11 U.S.C. § 1321. Therefore, other than the right to object on certain specified bases in the Bankruptcy Code, a Chapter 13 plan is a rather one-sided affair.

*In re Turner*, 558 B.R. 269, 280 (Bankr. N.D. Ill. 2016) (Lynch, J.).

Chapter 13 was arguably intended as a simplified, cut down approach to reorganizations for individuals with less complex cases and regular income. *See* H.R. Rep. No. 95-595, at 116-18 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6076, 6078 (describing the need to simplify consumer reorganizations). Eliminating voting, however, in chapter 13 has forced both the Bankruptcy Code and the courts to anticipate what might otherwise be handled in the voting and confirmation process in chapter 11 and instead impose those standards. In chapter 11, for example, a unanimously accepted plan—which acceptance will be gaged based on the requirements of section 1126—might be confirmed even if it otherwise would not satisfy the so-called "absolute priority rule" embodied in section 1129(b). *See, e.g.*, 11 U.S.C. §§ 1129(a)(7)(A)(i), (a)(8).

Voting is not mandated by statute in chapter 13 cases and thus there is no equivalent to section 1126 in chapter 13.[7] As a result, courts are faced with a dilemma when asked to determine, as they are in section 1325(a)(5)(A), whether a creditor has "accepted" a chapter 13 plan. By extension, courts are also faced with how to weigh objections in this regard, especially those of chapter 13 trustees where no creditor has objected.

In this context, many courts have concluded that silence by a secured creditor constitutes acceptance for the purpose of section 1325(a)(5)(A).

There is, of course, no question that, in the absence of any objection at all, the court may conclude that the requirements of section 1325(a)(3) have been met without the need for evidence in that regard. The Bankruptcy Rules provide as much. *See* Fed. R. Bankr. P. 3015(f) ("If no objection

---

[7]    Bankruptcy Rule 3018, which governs voting in chapter 9 and chapter 11 cases, was originally intended to also provide guidance in chapter 13 cases. *See* 1983 Committee Advisory Note to Fed. R. Bankr. P. 3018 ("This rule applies in chapter 9, 11 and 13 cases under the Code. The references in the rule to equity security holders will not, however, be relevant in chapter 9 or 13 cases. The rule will be of little utility in a chapter 13 case because only secured creditors may be requested to vote on a plan; unsecured creditors are not entitled to vote; see § 1325(a)(4), (5) of the Code."). Though Rule 3018, by amendment, removed reference to chapter 13 in its title in 1993, there appears to have been no statutory amendment precipitating that change to the Rule. Nonetheless, some treatises still speak to voting in chapter 13 cases by secured creditors. *See, e.g.,* Keith M. Lundin, LUNDIN ON CHAPTER 13, §§ 74.3, 74.4, https://www.lundinonchapter13.com/Home/DisplaySectionContent?sectionNumber=74.3 [& 74.4].

is timely filed, the court may determine that the plan has been proposed in good faith and not by any means forbidden by law without receiving evidence on such issues."). No such provision exists, however, within the Bankruptcy Rules with respect to section 1325(a)(1) or, by extension, section 1325(a)(5).

Nonetheless, the *Andrews dicta* and its progeny stand for the proposition that, in the absence of an objection, the court may conclude that a plan has been accepted. *This is a very different thing.*

Given how courts often handle motion practice, this conclusion is understandable even if misplaced. In American jurisprudence, the absence of an objection is often significant. In civil matters, provided that due process has been afforded, courts may conclude that the silence of affected parties equates to their acceptance. *See, e.g., Dooley v. Weil (In re Garfinkle)*, 672 F.2d 1340, 1347 (11th Cir. 1982) ("Silence or acquiescence may be sufficient conduct to create an estoppel if under the circumstances there was both a duty and opportunity to speak."); *cf. In re Kazi*, 985 F.2d 318, 322 (7th Cir. 1993) (failure to object in light of duties under Rule 4003 foreclosed that opportunity). *Andrews* itself, in reaching this conclusion, relies on its own prior precedent regarding plan confirmation and preclusion, not on acceptance itself. *Andrews*, 49 F.3d at 1406-09 *(citing to Lawrence Tractor Co. v. Gregory (In re Gregory)*, 705 F.2d 1118, 1121 (9th Cir. 1983)).

Equating lack of objections, preclusion, or waiver with acceptance is, however, wrong on a number of levels.[8]

First, voting and objections have different meanings and consequences in bankruptcy matters. *Compare* 11 U.S.C. § 1129(a)(9), (b) (providing specific treatment predicates to confirming a chapter 11 plan for nonaccepting creditors) *with* 11 U.S.C. § 1129(a)(15) (providing specific treatment predicates to confirming a chapter 11 plan as to creditors who object to the plan). In chapter 11 cases, acceptance for the purposes of voting may be deemed, *see, e.g.,* 11 U.S.C. § 1126(f), but such deemed acceptance does not equate to actual acceptance for all purposes. *See, e.g., In re SunEdison, Inc.*, 576 B.R. 453, 460-61 (Bankr. S.D.N.Y. 2017) (nonvoting creditors were not bound by the third-party release in a chapter 11 plan as affirmative acceptance was required); *In re Washington Mut. Inc.*, 442 B.R. 314, 355 (Bankr. D. Del. 2011) ("inaction" was not a sufficient manifestation of consent to support a release). Thus, even in chapter 11, where creditors are automatically afforded both the opportunity to object to and reject a plan, their silence does not equate to affirmative acceptance of a plan. To conclude that in chapter 13, where creditors have even less of a say, that their silence is of greater effect, is more than problematic. In chapter 13, all creditors have a right to object, 11 U.S.C. § 1324(a), but only secured creditors are asked to accept.

---

[8]   Not included in this analysis is the fact that equating silence with acceptance also runs contrary to one of the most basic precepts of contract law, that absent special circumstances, silence does not equal acceptance. Restatement (Second) of Contracts § 69 (1981); *see also In re Harvey*, 213 F.3d 318, 320 (7th Cir. 2000) ("[B]ankruptcy plans are to be treated as contracts and interpreted under state law . . . ."); *In re Kimball Hill, Inc.*, 565 B.R. 878, 888 (Bankr. N.D. Ill. 2017) (Barnes, J.) (same); *see also First Nat. Bank of Chicago v. Atl. Tele-Network Co.*, 946 F.2d 516, 519 (7th Cir. 1991) ("The law ordinarily treats silence as rejection, not acceptance, of an offer . . . ."). Bankruptcy plans are, after all, contracts.

Because bankruptcy plans, though interpreted under contract law, are first formed under the requirements of the Bankruptcy Code itself, it is not necessary to consider here how a contractual analysis might play out.

11 U.S.C. §§ 1323(c), 1325(a)(5)(A). Objections and acceptances clearly have different scopes and different purposes.

Second, equating the failure to object to be acceptance runs contrary to the express language of the Bankruptcy Code itself. In interpreting the Bankruptcy Code, the court is required to apply principles of plain language interpretation. *Ryan v. United States (In re Ryan)*, 725 F.3d 623, 626 (7th Cir. 2013) ("It is the province of the legislature to choose language that maximizes its own purposes, and for the courts to give that language its plain meaning or, where it is ambiguous to interpret it in the manner most consistent with the statutory language as a whole, its purpose, and in a manner that will render it constitutional."). Those principles look to the meaning and structure of the statute itself before looking elsewhere. Here, Congress chose the term "accepted." The plain meaning of "accept," without further context, is either to make a favorable response (by an affirmative act) or to endure without protest or reaction (silence), though the definitions seem to run toward the former, not the latter.[9] As either meaning is possible, the language is ambiguous. Multiple plausible interpretations require the court to search beyond the statute's plain language. *FTI Consulting, Inc. v. Merit Mgmt. Grp., LP*, 830 F.3d 690, 692 (7th Cir. 2016), *aff'd and remanded*, 138 S. Ct. 883 (2018). As a result, the court must turn to the purpose of statute and its context. *Id.* at 693 (*relying on Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (courts must interpret a "statute as a symmetrical and coherent regulatory scheme, and fit, if possible, all parts into an harmonious whole") (internal quotation marks and citations omitted); *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.")).

Looking at the language in context, it is clear to the court that, even in chapter 13, objections and acceptances are not the same. Congress used both terms in section 1327(a), which states that "[t]he provisions of a confirmed plan bind the debtor and each creditor, . . . whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a). Equating acceptance with lack of objection renders section 1323(c) nearly incomprehensible. 11 U.S.C. § 1323(c) ("Any holder of a secured claim that has accepted or rejected the plan is deemed to have accepted or rejected, as the case may be, the plan as modified, unless the modification provides for a change in the rights of such holder from what such rights were under the plan before modification, and such holder changes such holder's previous acceptance or rejection."). Section 1323(c), by its very wording, shows that Congress knows the difference between actual acceptance and deemed acceptance. Congress most certainly knew how to write section 1325(a)(5)(A) to state expressly that the provision would apply in the absence of the objection, but chose instead to speak in terms of acceptance. *See, e.g.*, 11 U.S.C. § 327(c) ("unless there is objection by another creditor or the United States trustee"); 11 U.S.C. § 502(a) ("[a] claim or interest . . . is deemed allowed unless a party in interest . . . objects"); 11 U.S.C. § 1129(a)(15) (providing specific treatment requirements as predicates to confirming a chapter 11 plan as to creditors who object to the plan).

Third, placing the burden with regard to confirmation of a plan on the creditor incorrectly inverts the burdens under section 1325. As noted at the outset, the burden of showing satisfaction of the elements of section 1325 falls on the plan's proponent, in this case, the Debtor. *Love*, 957

---

[9]   *Accept*, BLACK'S LAW DICTIONARY (3d ed. 1933) ("Means something more than to receive, meaning to adopt, to agree to carry out provisions, to keep and retain."); *Accept*, BALLENTINE'S LAW DICTIONARY (3d ed. 1969) ("To receive with the intent to retain; to give assent.").

11

F.2d at 1354-55. As the plan proponent, especially one proposing a nonstandard provision applicable only to specified creditors, the Debtor has the burden of demonstrating acceptance. Forcing a creditor to object to preserve its rights removes that burden from the Debtor. It is not unreasonable or out of the context with the overall statutory theme in chapter 13 to require a debtor to carry its burden by affirmatively seeking acceptance from creditors who a debtor is individually targeting with nonstandard provisions. *Cf. Briseno v. Mut. Fed. Savs. & Loan Ass'n (In re Briseno)*, 496 B.R. 509, 515 (Bankr. N.D. Ill. 2013) (Baer, J.) (plan proponent bears the burden of establishing value for lien stripping contained in chapter 13 plan); *In re Zimmerman*, 276 B.R. 598, 603 (Bankr. C.D. Ill. 2001) (setting out the up-front burdens that fall on a debtor as plan proponent with respect to specific lien stripping, even in advance of an objection).

Fourth and perhaps most important, equating the lack of objection to acceptance requires two logical leaps. The court must conclude that somehow preclusion and waiver equate to acceptance. The court must also conclude that the Chapter 13 Trustee's objection must be disregarded.

That former assumption collapses preclusion and waiver into that of acceptance. It is true, as noted above, that the confirmation of a plan may be preclusive on many issues. *ReGen Capital I, Inc. v. UAL Corp. (In re UAL Corp.)*, 635 F.3d 312, 321 (7th Cir. 2011) ("By failing to object to or appeal the plan's confirmation, [creditor] lost any opportunity to seek an exemption from or to challenge this provision.").

However, holding that the failure to object to a potentially defective plan provision equates to acceptance of that provision runs contrary to the Supreme Court's ruling in *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010). In *Espinosa*, the Supreme Court articulated the importance of bankruptcy courts ensuring that plans are confirmed only if they comply with the Bankruptcy Code. In the context of an unobjected to plan which attempted to discharge student loan debt without demonstrating undue hardship, the Court stated that "[f]ailure to comply with this self-executing requirement should prevent confirmation of the plan *even if the creditor fails to object, or to appear in the proceeding at all*. That is because § 1325(a) instructs a bankruptcy court to confirm a plan only if the court finds, *inter alia*, that the plan complies with the 'applicable provisions' of the Code." *Espinosa*, 559 U.S. at 276-77 (citations omitted) (emphasis added). In light of all of the foregoing, the Supreme Court nonetheless refused to void the confirmation of the plan, finding confirmation to be preclusive. *Id.* at 278-79. *Espinosa*'s preclusive decision but stern warnings to the court of its obligation to review plans and admonition that creditors need not object to be protected by the Bankruptcy Code, makes that even where preclusion applies, the court must fulfill its obligation to ensure plan provisions are actually met. *Andrews* was in error when relied on preclusion to conclude that the failure to object equates to acceptance.

*Espinosa* is, of course, binding on this court where *Andrews* is not. Further, *Espinosa* is fifteen years more recent than *Andrews*, and much of the case law following *Andrews* has occurred in between. Nonetheless, some courts have continued to follow *Andrews* irrespective of the language in *Espinosa*. *See, e.g., Wachovia Dealer Servs. v. Jones (In re Jones)*, 530 F.3d 1284, 1291 (10th Cir. 2008) ("[T]he failure to object constitutes acceptance of the plan."); *Austin v. Bankowski*, 519 B.R. 559, 563 (D. Mass. 2014) (mentioning *Espinosa* but providing no explanation of its role in following *Andrews*); *Scotiabank de Puerto Rico v. Lorenzo (In re Lorenzo)*, Case No. 15-011, 2015 WL 4537792, at *6 (B.A.P. 1st Cir. July 24, 2015) ("[F]ailure to prosecute its objection constituted acceptance of the plan for purposes of § 1325(a)(5)(A)."); *Bronitsky v. Bea (In re Bea)*, 533 B.R. 283, 290 (B.A.P. 9th Cir. 2015)